# Illinois Official Reports

## Supreme Court

*Price v. Philip Morris, Inc.*, 2015 IL 117687

| | |
|---|---|
| Caption in Supreme Court: | SHARON PRICE *et al*., Appellees, v. PHILIP MORRIS, INC., Appellant. |
| Docket No. | 117687 |
| Filed | November 4, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Madison County, the Hon. Dennis P. Ruth, Judge, presiding. |
| Judgment | Judgments vacated. Cause dismissed. |
| Counsel on Appeal | James R. Thompson, George C. Lombardi, and Matthew R. Carter, of Winston & Strawn LLP, Michele Odorizzi, of Mayer Brown LLP, and Kevin M. Forde and Joanne R. Driscoll, of Forde Law Offices LLP, all of Chicago, Larry Hepler and Beth Bauer, of HeplerBroom LLC, of Edwardsville and Lisa S. Blatt and Sarah M. Harris, of Arnold & Porter LLP, of Washington, DC, for appellant. |

Joseph A. Power, Jr., and Todd A. Smith, of Power Rogers & Smith, of Chicago, and George A. Zeles, Maximillian C. Gibbons and Matthew C. Davies, of Chicago, and Stephen M. Tillery, Robert L. King and Aaron M. Zigler, of St. Louis, Missouri, all of Korein Tillery, Michael J. Brickman and Nina Fields Britt, of Richardson, Patrick Westbrook & Brickman, of Charleston, South Carolina, and David C. Frederick and Joshua D. Branson, of Kellogg, Huber, Hansen, Todd, Evans & Figel, of Washington, D.C., for appellees.

Michael Resis and Britta Sahlstrom, of SmithAmundsen, LLC, of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel.

Stephanie A. Scharf, Sarah R. Marmor and George D. Sax, of Scharf Banks Marmor LLC, of Chicago (Hugh F. Young, Jr., of Reston, Virginia, of counsel) for *amicus curiae* Product Liability Advisory Council, Inc.

Patricia C. Bobb, of Chicago, for *amicus curiae* Economic Scholars.

Joel J. Africk and Todd D. Fraley, of Chicago, for *amici curiae* Public Health Associations *et al*.

Bruce Robert Pfaff, of Pfaff, Gill & Ports, Ltd., of Chicago, for *amicus curiae* Cooney & Conway.

John B. Kralovec. of Kralovec, Jambois & Schwartz, of Chicago, for *amici curiae* Law Professors of Civil Procedure.

Justices

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Karmeier and Theis concurred in the judgment and opinion.

Justice Freeman dissented, with opinion, joined by Justice Kilbride.

Justice Thomas took no part in the decision.

**OPINION**

¶ 1     The plaintiffs, Sharon Price and Michael Fruth, as individuals and on behalf of a class of similarly situated individuals, filed a petition in the circuit court of Madison County seeking relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)). The circuit court denied the petition on the merits and the appellate court reversed (2014 IL App (5th) 130017).

¶ 2     Because plaintiffs' petition sought vacatur of the judgment rendered by this court in *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182 (2005), we hold that both the circuit court, and the appellate court on review of the circuit court's judgment, erred in considering the merits of plaintiffs' petition. Section 2-1401 does not authorize the circuit court to vacate the judgment of a reviewing court. Instead, a litigant seeking to vacate the judgment of a reviewing court after the rehearing period has expired and the mandate has issued must file a motion to recall the mandate in the reviewing court which rendered the contested judgment. We therefore vacate the judgments of the lower courts and dismiss this cause of action without prejudice to plaintiffs to file a motion to recall the mandate in this court. We express no opinion on the merits of such a motion, should one be filed at a future date.

¶ 3                                  BACKGROUND

¶ 4     In February 2000, plaintiffs filed a class action lawsuit in the circuit court of Madison County against the defendant, Philip Morris, Inc. The suit alleged that defendant's use of the terms "lights" and "lowered tar and nicotine" on the packaging and in the marketing of its Marlboro Lights and Cambridge Lights cigarettes (Lights) violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq*. (West 1998)) and the Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq*. (West 1998)). Plaintiffs alleged that, " 'when smoked under actual conditions' " by consumers, Lights failed to provide " 'lowered tar and nicotine' " as compared to conventional cigarettes and, thus, the descriptors used by defendant were deceptive. *Price*, 219 Ill. 2d at 209-11. Plaintiffs did not seek damages for personal injuries, if any, resulting from their consumption of Lights. Instead, they sought only economic damages, based on their contention that they did not receive what defendant told them they would receive when they purchased Lights, *i.e.*, a cigarette that delivered less tar and nicotine than conventional cigarettes and that was, therefore, safer. *Id.* at 209.

¶ 5     Defendant raised numerous defenses in response to plaintiffs' complaint. Relevant here, defendant argued that plaintiffs' complaint was barred by section 10b(1) of the Consumer Fraud Act (815 ILCS 505/10b(1) (West 1998)). This provision states that nothing in the Consumer Fraud Act shall apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." *Id.* Relying on various exhibits as well as expert testimony, defendant asserted that its use of the terms "light" and "lowered tar and nicotine" complied with policies promulgated by the Federal Trade Commission (FTC) and, thus, plaintiffs' complaint should not go forward.

¶ 6     The circuit court rejected defendant's proffered defenses, including its defense based on section 10b(1). The court certified a class consisting of all purchasers of Lights in Illinois from

1971 to 2001, approximately 1.14 million people. On March 21, 2003, following a bench trial, the circuit court rendered judgment in favor of plaintiffs and awarded compensatory and punitive damages totalling $10.1 billion.

¶ 7    This court granted direct review under Supreme Court Rule 302(b) (Ill. S. Ct. R. 302(b) (eff. Oct. 4, 2011)) and, on December 15, 2005, reversed the judgment of the circuit court. In its opinion, this court concluded that the FTC had "specifically authorized" defendant's use of the descriptors "light" and "lowered tar and nicotine," thereby barring plaintiffs' complaint. In reaching this conclusion, the court first explained that "the FTC's informal regulatory activity, including the use of consent orders, comes within the scope of section 10b(1)'s requirement that the specific authorization be made 'by laws administered by' a state or federal regulatory body." *Price*, 219 Ill. 2d at 258. This conclusion was consistent, the court stated, with the testimony of defendant's expert witness, Dr. John Peterman, a former FTC bureau director, who testified that "the FTC uses consent orders to provide guidance to the entire cigarette industry." *Id.*

¶ 8    This court then found that, in a 1971 consent order (*In re American Brands, Inc.*, 79 F.T.C. 255 (1971)):

> "the FTC could, and did, specifically authorize all United States tobacco companies to utilize the words 'low,' 'lower,' 'reduced' or like qualifying terms, such as 'light,' so long as the descriptive terms are accompanied by a clear and conspicuous disclosure of the 'tar' and nicotine content in milligrams of the smoke produced by the advertised cigarette." *Price*, 219 Ill. 2d at 265.

¶ 9    The court also found that the FTC reiterated this authorization in a 1995 consent order (*In re American Tobacco Co.*, 119 F.T.C. 3 (1995)). This order, the court stated, "forbade the representation of tar ratings as 'a numerical multiple, fraction or ratio of the tar or nicotine ratings of any other brand,' but specifically allowed the 'express or implied representation' that a cigarette is ' "low," "lower," or "lowest" in tar and/or nicotine.' " *Price*, 219 Ill. 2d at 265-66. Accordingly, this court held that plaintiffs' claim was "barred by section 10b(1) of the Consumer Fraud Act." *Id.* at 266.

¶ 10   Although this ruling resolved the appeal, the court also noted that it had "reservations" about the "existence of individual issues" concerning deception, causation and injury "that might make class certification inappropriate," as well as "grave reservations" about plaintiffs' theory of damages in the case. *Id.* at 268-71. The court did not, however, rule on these issues. The court concluded its opinion by stating that the judgment of the circuit court was reversed and that the cause was remanded "with instructions to dismiss pursuant to section 10b(1) of the Consumer Fraud Act." *Id.* at 274.

¶ 11   Justice Karmeier, joined by Justice Fitzgerald, specially concurred, finding that plaintiffs' consumer fraud claim failed for the "additional and more basic reason" that plaintiffs had "failed to establish that they sustained actual damages." *Id.* at 275 (Karmeier, J., specially concurring, joined by Fitzgerald, J.). Justice Freeman and Justice Kilbride each dissented from the judgment of the court. The dissenting justices rejected the court's conclusion that plaintiffs' complaint was barred by section 10b(1) as well as the special concurrence's conclusion that plaintiffs had failed to establish actual damages. *Id.* at 285-337.

¶ 12   The court stayed its mandate while plaintiffs petitioned the United States Supreme Court for writ of *certiorari*. The mandate was issued by this court on December 5, 2006, after

- 4 -

*certiorari* was denied. On December 18, 2006, the circuit court dismissed plaintiffs' complaint with prejudice in accordance with this court's mandate.

¶ 13 On December 18, 2008, plaintiffs commenced the present action by filing a petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)) in the circuit court of Madison County. As ultimately amended, plaintiffs' petition focused primarily on an *amicus curiae* brief that had been filed by the FTC in the United States Supreme Court case, *Altria Group, Inc. v. Good*, 555 U.S. 70 (2008). Plaintiffs alleged that, in this brief, which had been filed subsequent to the dismissal order in *Price*, the FTC indicated that it had not authorized cigarette companies to use descriptors such as "light" or "lowered tar and nicotine." Plaintiffs contended that the FTC statements in the brief, as well as other actions taken by the FTC subsequent to *Price*, constituted "new evidence" that merited relief from judgment under section 2-1401. Plaintiffs asserted in their petition that they had:

> "a meritorious claim because the newly-available evidence discussed above contradicts the factual record that led to the conclusion that section 10(b)(1) of the Illinois Consumer Fraud Act exempted Philip Morris' conduct from liability. Because that conclusion was pivotal and necessary to the Supreme Court's reversal of the March 21, 2003 judgment in this case, Plaintiffs, who prevailed on their claims in the trial court, have a meritorious claim."

¶ 14 Plaintiffs' petition concluded by stating that, "[a]s the final judgment was predicated on an inaccurate interpretation of the historical record, the newly-available evidence would have prevented entry of the judgment." Plaintiffs therefore requested the circuit court "to vacate the final judgment in this case."

¶ 15 The circuit court dismissed plaintiffs' section 2-1401 petition, finding that the petition had not been filed within the time limits required under that statute (735 ILCS 5/2-1401(c) (West 2006)). The appellate court reversed that determination and remanded the matter to the circuit court to address the merits of plaintiffs' petition. *Price v. Philip Morris, Inc.*, No. 5-09-0089 (2011) (unpublished order under Illinois Supreme Court Rule 23). This court denied defendant's petition for leave to appeal. *Price v. Philip Morris Inc.*, No. 112067 (Ill. Sept. 30, 2011).

¶ 16 On remand, the circuit court explained that, for relief to be granted under section 2-1401, plaintiffs had to show that it was more probably true than not that defendant's section 10b(1) defense would have failed if the FTC position had been presented in the underlying case. The circuit court then stated:

> "this case is in a unique procedural posture as Plaintiffs in fact prevailed at the trial level. Defendant only prevailed, in its affirmative defense, on direct appeal to the Illinois Supreme Court. Thus this Court must determine whether it is more probably true than not that, had the FTC position been presented in the record on appeal, the Illinois Supreme Court would not have ruled in Defendant's favor on its affirmative defense that Plaintiffs' claim was exempt pursuant to Section 10b(1) of the [Consumer Fraud Act]."

After reviewing the parties' arguments, the circuit court concluded that "it appears probable that, had the FTC position been known to the Illinois Supreme Court, the court would have given deference to the FTC and not have found in Defendant's favor on the Section 10b(1) exemption."

¶ 17    However, the circuit court then went on to hold that, because this court in *Price* had expressed "grave reservations" regarding plaintiffs' theory of damages, and because the special concurrence had expressly found for defendant on the issue of damages, it was "likely" defendant would have prevailed in the case even if the section 10b(1) defense had not succeeded. The circuit court therefore denied plaintiffs' section 2-1401 petition on the merits, holding that plaintiffs had failed to show that it was "more probably true than not" that *Price* would have been decided differently, even given the information in plaintiffs' petition.

¶ 18    The appellate court again reversed. 2014 IL App (5th) 130017. The appellate court concluded that the only issue that was properly before it was whether the statements made by the FTC in 2008 would have altered this court's resolution of the section 10b(1) issue, and that any inquiry into what this court would have decided had it addressed the issue of damages was impermissibly speculative. See *id.* ¶ 50. Describing the FTC *amicus* brief as "contain[ing] *direct* statements that the FTC *never* intended to authorize use of the terms" used by defendant (emphases in original) (*id.* ¶ 55)," the appellate court concluded it was "easy to see" how this court's analysis "would have been changed" (*id.*).

¶ 19    After addressing the remaining elements of the section 2-1401 petition, the appellate court held that plaintiffs were entitled to relief. Noting that "the unique procedural history" of the case left it with little guidance in resolving the question of what relief could be granted, the appellate court ordered the circuit court to restore the parties to the status quo that existed before defendant filed its appeal from the original circuit court judgment in plaintiffs' favor. This had the effect of reinstating the original $10.1 billion judgment that had been vacated by this court in *Price*. *Id.* ¶¶ 59-60.

¶ 20    We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2013).

¶ 21                                    ANALYSIS

¶ 22    At issue in this case is whether the appellate court correctly reversed the judgment of the circuit court denying plaintiffs' petition brought pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)). Section 2-1401 of the Code of Civil Procedure creates a comprehensive statutory procedure for obtaining relief from final orders and judgments more than 30 days after their entry. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. The statute abolishes the common-law writs that once provided the means to collaterally challenge final judgments and replaces them with a single, postjudgment petition. Section 2-1401(a) provides:

> "(a) Relief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section. Writs of error coram nobis and coram vobis, bills of review and bills in the nature of bills of review are abolished. All relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered. Except as provided in Section 6 of the Illinois Parentage Act of 1984, there shall be no distinction between actions and other proceedings, statutory or otherwise, as to availability of relief, grounds for relief or the relief obtainable." 735 ILCS 5/2-1401(a) (West 2012).

¶ 23    Section 2-1401(b) requires the petition to be filed in the "same proceeding" in which the contested order or judgment was entered, but the petition is not a continuation of the original action. 735 ILCS 5/2-1401(b) (West 2012). Instead, the section 2-1401 petition is an initial pleading that commences a new and separate cause of action, subject to the usual rules of civil procedure. *People v. Vincent*, 226 Ill. 2d 1, 7-8 (2007). Relief under section 2-1401 is predicated on the showing of a defense or claim that would have precluded rendition of the judgment in the original action as well as diligence in both discovering the defense or claim and presenting the petition. *Id.* The petition must be supported by affidavit or other appropriate showing as to matters not of record and must be filed no later than two years after the entry of the contested order or judgment. *Id.* at 7.

¶ 24    Defendant initially contends that both the circuit court and the appellate court, on review of the circuit court's judgment, erred in considering the merits of plaintiffs' section 2-1401 petition. Defendant maintains that plaintiffs' petition sought to vacate the judgment rendered by this court in *Price* and that the lower courts have no authority to grant such relief.

¶ 25    To better understand defendant's argument, it will be helpful at the outset to review how section 2-1401 applies when the judgment being challenged is one that was rendered by a circuit court. When a petitioner seeks relief from the final judgment of a circuit court under section 2-1401, the petition must be filed in the circuit court in which the contested judgment was entered and must allege either that the petitioner had a valid claim in the original action (if he was an unsuccessful plaintiff) or a valid defense (if he was an unsuccessful defendant). See generally Ill. Ann. Stat., ch. 110, ¶ 2-1401, Historical and Practice Notes, at 610-11 (Smith-Hurd 1983). If the petitioner is able to satisfy the requirements of section 2-1401, the circuit court will then grant relief directed against its original judgment. In other words, when a petitioner invokes section 2-1401 to obtain relief from an adverse circuit court judgment, the petitioner is asking the circuit court to revisit the correctness of the court's own judgment. See, *e.g.*, *Smith v. Airoom, Inc.*, 114 Ill. 2d 209 (1986).

¶ 26    This is true even if the original circuit court judgment was affirmed on appeal before the petitioner filed the section 2-1401 petition. The section 2-1401 petition is a new action, based on matters that were not of record in the original action and that were not considered by the appellate court. Relief, if it is granted, is premised on the theory that these new matters would have changed the result in the original circuit court action. Thus, the fact that a circuit court judgment has been affirmed on appeal does not preclude the filing of a section 2-1401 petition. The section 2-1401 petitioner is still, in these circumstances, asking only that the circuit court revisit the correctness of its own, adverse judgment. See *People v. Partee*, 125 Ill. 2d 24, 35 (1988) (the filing of a direct appeal does not affect the availability of postjudgment relief from an adverse circuit court judgment); *People v. Dabbs*, 372 Ill. 160, 165-66 (1939) (construing section 72 of the Civil Practice Act of 1933, a statutory predecessor to section 2-1401). See also *Standard Oil Co. of California v. United States*, 429 U.S. 17 (1976) (reaching the same result under federal law).

¶ 27    In this case, however, when plaintiffs filed their section 2-1401 petition in circuit court they did not, and could not, ask the court to revisit the correctness of its original judgment rendered in March, 2003. Plaintiffs *won* in the original action in circuit court and there was, therefore, no adverse judgment from which they needed to obtain relief. Instead, the adverse judgment was rendered by this court, when plaintiffs lost on direct appeal in *Price*. Thus,

- 7 -

defendant asserts that the prayer in plaintiffs' petition that the circuit court "vacate the final judgment in this case" is, in fact, a request by plaintiffs to the circuit court to grant relief from this court's judgment. This, defendant maintains, is impermissible, because a lower court does not have the authority to vacate the judgment of a higher court.

¶ 28    Plaintiffs respond by contending that "section 2-1401 relief is available from a final judgment entered by *or* at the direction of a higher court" (emphasis added). Plaintiffs, thus, make two arguments. First, plaintiffs contend that as a general matter, section 2-1401 authorizes the circuit court to grant relief from a "final judgment entered by" a reviewing court. Therefore, plaintiffs assert, the circuit court in this case was authorized to vacate the judgment rendered by this court in *Price* on December 15, 2005. Second, plaintiffs point out that, after reversing the judgment of the circuit court, our opinion in *Price* remanded the cause to the circuit court with instructions to dismiss the action. In compliance with these instructions, an order of dismissal was entered in the circuit court on December 18, 2006. Plaintiffs maintain that the order of dismissal may be considered distinct or separate from this court's judgment in *Price* and, even though it was "entered *** at the direction of a higher court," they may seek relief from that order of dismissal. Thus, according to plaintiffs, even if section 2-1401 did not authorize the circuit court to vacate this court's judgment in *Price*, it did authorize the circuit court to vacate the order of dismissal and relief may be granted on that basis. We address these arguments in turn.

¶ 29                    A. Section 2-1401 Does Not Authorize the Circuit Court to
                            Vacate the Judgment of a Reviewing Court

¶ 30    Plaintiffs' contention that section 2-1401 authorizes the circuit court to vacate the judgment of a higher court presents a question of statutory interpretation. When interpreting a statute, our primary objective is to give effect to the legislature's intent, presuming that the legislature did not intend to create absurd, inconvenient or unjust results. *People v. Gaytan*, 2015 IL 116223, ¶ 23. The best indication of that intent is found in the statutory language, given its plain and ordinary meaning. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 21. Further, in determining legislative intent, we may consider the purpose and necessity for the law as well as the consequences that would result from interpreting the statute in one way or another. *Gaytan*, 2015 IL 116223, ¶ 23. The interpretation of a statute is a question of law that is reviewed *de novo*. *Id.*

¶ 31    In support of their contention that the circuit court has the authority, under section 2-1401, to vacate the adverse judgment of a reviewing court, plaintiffs point to the language of subsection (a) of the statute. Plaintiffs emphasize that this provision is broadly worded to provide a means of relief "in every case *** regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered." 735 ILCS 5/2-1401(a) (West 2012). Plaintiffs further observe that the statute does not contain any exception for judgments rendered by a reviewing court. Therefore, according to plaintiffs, section 2-1401 authorizes the circuit court to vacate a judgment rendered by a higher court. We disagree.

¶ 32    Subsection (b) of section 2-1401 states, in part, that the petition "must be filed in the same proceeding in which the order or judgment was entered but is not a continuation thereof." 735 ILCS 5/2-1401(b) (West 2012). Although the term "same proceeding" is not defined in the

statute, its use by the General Assembly has long been understood to mean that the postjudgment petition must be filed in the same court in which the contested judgment was entered and, when possible, assigned to the same judge who heard the original action. See, *e.g.*, *Kilbride v. Kilbride*, 64 Ill. App. 2d 355, 360-61 (1965). To fully explain why this is so, it is necessary to review some of the history of section 2-1401.

¶ 33　　　The relief sought by plaintiffs under their section 2-1401 petition in this case is that which, at common law, was available under the writ of *coram nobis*. In general, the writ of *coram nobis* was a means of collaterally challenging a final judgment by bringing "to the court's attention factual matters that, if known to the court before entry of judgment, would have precluded entry of that judgment." *Warren County*, 2015 IL 117783, ¶ 32 (citing *Ellman v. De Ruiter*, 412 Ill. 285, 290 (1952), and *People v. Touhy*, 397 Ill. 19, 24 (1947)). See also, *e.g.*, *Mitchell v. King*, 187 Ill. 452, 457 (1899); Ill. Ann. Stat., ch. 110, ¶ 2-1401, Historical and Practice Notes, at 604 (Smith-Hurd 1983); David G. Seykora, *Recall of Appellate Mandates in Federal Civil Litigation*, 64 Cornell L. Rev. 704, 710 (1979) (noting that the writ of *coram nobis* was available in both appellate and trial courts). Given its purpose, the writ of *coram nobis* had to be "filed in the court that rendered the judgment" being contested. *Warren County*, 2015 IL 117783, ¶ 32; *Mitchell*, 187 Ill. at 457 ("the assignment of error was heard in the same court where the error was alleged to have been committed"); Ill. Ann. Stat., ch. 110, ¶ 2-1401, Historical and Practice Notes, at 608 (Smith-Hurd 1983).

¶ 34　　　Although a few very early Illinois cases recognized the writ of *coram nobis* (see, *e.g.*, *Beaubien v. Hamilton*, 4 Ill. 213 (1841)), it was declared "obsolete" by this court in 1867 (see *McKindley v. Buck*, 43 Ill. 488, 490 (1867)). In 1871, the legislature expressly abolished the writ and replaced it with a statutory motion. *Ellman*, 412 Ill. at 290-91. Since that time, a series of statutory provisions have provided a mechanism for obtaining collateral relief from final judgments. *Warren County*, 2015 IL 117783, ¶ 33.

¶ 35　　　In *People v. Sheppard*, 405 Ill. 79 (1950), this court addressed one such statute, section 72 of the Civil Practice Act of 1933. At the time *Sheppard* was decided, section 72 provided that all errors of fact which could have been corrected under the writ of *coram nobis* could "be corrected by the court in which the error was committed, upon motion in writing" at any time within five years after the rendition of the final judgment in the case. Ill. Rev. Stat. 1949, ch. 110, ¶ 196. While section 72 spoke only of the necessity of filing the motion in "the court in which the error was committed," *Sheppard* held that, when possible, the motion also had to be heard by the same judge who entered the contested judgment. *Sheppard*, 405 Ill. at 82. As the *Sheppard* court explained, this result followed from the nature of the writ of *coram nobis*:

> "A reasonable construction of section 72 of the Civil Practice Act [Ill. Rev. Stat. 1949, ch. 110, ¶ 196], to the extent it provides that all errors in fact, committed in the proceedings of any court of record, and which, by the common law, could have been corrected by the writ of error *coram nobis*, 'may be corrected by the court in which the error was committed,' is that the motion in the nature of a writ of error *coram nobis* should be presented to the same judge who rendered the original judgment. As observed in *McGrath & Swanson Construction Co. v. Chicago Railways Co.* 252 Ill. App. 479, 'That the errors to be corrected under the writ were errors of fact would seem to require that the writ should be brought before the same judge who rendered the

original judgment, for he only would know whether or not he was ignorant of the fact which if known would have prevented the judgment.' " *Id.*

¶ 36    In 1955, section 72 was substantially revised by the legislature. See Ill. Rev. Stat. 1955, ch. 110, ¶ 72. Consistent with *Sheppard*, the legislature changed the requirement that a section 72 motion be filed in the same court in which the error was committed to a requirement that a postjudgment petition "be filed in the same proceeding in which the order, judgment or decree was entered." Ill. Rev. Stat. 1955, ch. 110, ¶ 72(2). By using the term "same proceeding," the legislature captured the point made in *Sheppard* that the petition had to be filed in the same court in which the error occurred and, when possible, presented to the same judge who rendered the original judgment.[1] Subsequent decisions, such as *Kilbride*, 64 Ill. App. 2d at 359 n.*, 360-61, have recognized that the term "same proceeding" reflects the holding of *Sheppard*.

¶ 37    Apart from the removal of the word "decree," the language in the current version of section 2-1401(b) is identical to that found in the amended version of section 72 addressed by *Kilbride* in 1965. Thus, for at least 50 years, Illinois courts have held that the statutory requirement that a postjudgment petition be filed in the "same proceeding" means that the petition must be filed in the same court in which the judgment being challenged was entered and, when possible, heard by the same judge who rendered that judgment. See also, *e.g.*, *Warren County*, 2015 IL 117783, ¶ 35 (noting that "the legislature intended section 2-1401 to operate as the statutory analog to the common law writ" of *coram nobis*). From this, it follows that a litigant cannot file a section 2-1401 petition in circuit court to vacate the judgment of a reviewing court. In such a case, the petition would not be filed in the same court in which the judgment being challenged was entered and, therefore, would not be filed in the "same proceeding."

¶ 38    This understanding of section 2-1401 is compelled not only by the language and history of the statute, but also by our constitution. The judicial article of the Illinois Constitution of 1970, like its predecessor in the constitution of 1870, creates a three-tiered court system, with the appellate court sitting in review of the circuit courts, and the supreme court sitting in review of the appellate and circuit courts. Ill. Const. 1970, art. VI. A fundamental principle flows from this hierarchical structure: "Where the Supreme Court has declared the law on any point, *it alone can overrule and modify its previous opinion*, and the lower judicial tribunals are bound by such decision and it is the duty of such lower tribunals to follow such decision in similar cases." (Emphasis added.) *Agricultural Transportation Ass'n v. Carpentier*, 2 Ill. 2d 19, 27 (1953); *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 551 (1983); *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 836 (2004) (noting that the failure to adhere to this principle would "inject chaos into the judicial process").

¶ 39    When conducting a trial or other ongoing proceeding, a circuit court has the authority and responsibility to determine whether a supreme court decision is on point and, therefore, must be applied in the case before it, or whether the decision is distinguishable and should not be applied. But that is not the power which section 2-1401 confers on the circuit court. Section 2-1401 gives authority to the circuit court to grant relief from a judgment, *i.e.*, to vacate it and

_____

[1]The legislature could not, of course, create a mandatory requirement that the postjudgment petition be presented to the same judge who rendered the original judgment because of the practical limitations of such a rule: a litigant would be left without a remedy if the judge were to retire or pass away before the postjudgment petition was filed.

- 10 -

render it without legal effect. *Vincent*, 226 Ill. 2d at 7. Under our constitutional scheme, the circuit court cannot possess that power over a reviewing court's judgment. Thus, to say that section 2-1401 grants a circuit court the authority to vacate the judgment of a reviewing court would be to say that the General Assembly intended to grant an unconstitutional power to our circuit courts. We are certain this is not the case.

¶ 40    Since, under the terms of the statute, section 2-1401 does not authorize the circuit court to vacate a reviewing court's judgment, should a petitioner seeking relief from a reviewing court judgment after the mandate has issued file a section 2-1401 petition directly in the reviewing court? No.

¶ 41    Under the Illinois Constitution of 1970, the procedures which govern appellate practice in our reviewing courts are established by this court through its rulemaking authority, not by the General Assembly through legislation. Ill. Const. 1970, art. VI, § 16 ("The Supreme Court shall provide by rule for expeditious and inexpensive appeals."); *People ex rel. Stamos v. Jones*, 40 Ill. 2d 62, 66 (1968) ("the constitution has placed responsibility for rules governing appeal in the Supreme Court, and not in the General Assembly"); Ill. Ann. Stat., ch. 110, ¶ 1-107, Historical and Practice Notes, at 34-35 (Smith-Hurd 1983) ("the Illinois Supreme Court is granted exclusive jurisdiction over the regulation of appeals by the Judicial Article of the Constitution of 1970"). Section 2-1401 is a provision of the Civil Practice Law, article II, of the Code of Civil Procedure (see 735 ILCS 5/1-101(b) (West 2012)), which governs civil practice in the circuit courts. Section 2-1401 is inapplicable to reviewing courts and, indeed, a determination that the proceedings in the appellate or supreme court could be governed by the legislature through section 2-1401 would raise serious separation of powers concerns. *Koffski v. Village of North Barrington*, 241 Ill. App. 3d 479, 482-83 (1993).

¶ 42    This does not mean, however, that a litigant seeking relief from a reviewing court's judgment under circumstances similar to those present here is without a remedy. Appellate courts "are recognized to have an inherent power to recall their mandates." *Calderon v. Thompson*, 523 U.S. 538, 549 (1998). Because of " 'the profound interests in repose' " that attach to the mandate of a reviewing court, the power to recall a mandate is one that "can be exercised only in extraordinary circumstances." *Id*. at 550 (quoting 16 Charles Alan Wright *et al.*, Federal Practice and Procedure § 3938, at 712 (2d ed. 1996)). Nevertheless, this power is long-standing, having been firmly "established in English practice long before the foundation of our Republic." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244-45 (1944), *rev'd on other grounds*, *Standard Oil Co. of California v. United States*, 429 U.S. 17 (1976) (*per curiam*). See also, *e.g.*, *Ex Parte James*, 836 So. 2d 813, 836-39 (Ala. 2002) (Houston, J., specially concurring) (collecting cases).

¶ 43    Although no Illinois Supreme Court rule addresses the general power of a reviewing court to recall its mandate,[2] Rule 361(a) provides that "an application for an order or other relief" in the reviewing court "shall be made by filing a motion." Ill. S. Ct. R. 361(a) (eff. Jan. 1, 2015). Further, motions to recall the mandate have been considered, and ruled on, by this court in the past. See, *e.g.*, *Avery v. State Farm*, No. 91494, Order Denying Motion by Appellees to Recall Mandate and Vacate August 18, 2005 Judgment (filed Nov. 17, 2011),

_____

[2]Illinois Supreme Court Rule 368(c) (eff. July 1, 2006), provides that an appellate court mandate may be recalled until the time for seeking review in this court has expired, and that this court's mandate may be recalled until the time for seeking review in United States Supreme Court has expired.

- 11 -

http://www.illinoiscourts.gov/SupremeCourt/Announce/2011/111711_4.pdf. (last visited Nov. 2, 2015). Thus, pursuant to this court's rules and practice, after the mandate of the reviewing court has issued, the appropriate means to bring to the reviewing court's attention factual matters that, if known to the court before entry of judgment, would have precluded entry of that judgment, is by filing a motion to recall the mandate in that court.

¶ 44 Notably, federal courts have reached the same conclusion under Federal Rule of Civil Procedure 60(b) (Fed. R. Civ. P. 60(b)), the federal counterpart to section 2-1401. See, *e.g.*, *Ute Indian Tribe of the Uintah & Ouray Reservation v. State of Utah*, 114 F.3d 1513, 1520-22 (10th Cir. 1997); *Eutectic Corp. v. Metco, Inc.*, 597 F.2d 32, 34 (2d Cir. 1979) (*per curiam*) (observing that a federal district court has no authority to "alter or set aside" a judgment of the court of appeals). As one treatise states: "If the request for relief goes directly to the correctness of the court of appeals ruling, *** the district court ordinarily lacks power to review the court of appeals decision and any relief must be provided by the court of appeals." 16 Charles Alan Wright *et al.*, Federal Practice and Procedure § 3938 (3d ed. 2008).

¶ 45 For these reasons, we hold that section 2-1401 does not authorize the circuit court to grant collateral relief from the judgment of a reviewing court. Such relief must be sought by filing a motion to recall the mandate in the reviewing court. Accordingly, neither the circuit court in this case, nor the appellate court on review, had the authority to vacate the judgment of this court rendered in *Price* on December 15, 2005.

¶ 46                B. The Lower Courts Did Not Have the Authority, Under Section 2-1401,
                          to Vacate the December 18, 2006, Dismissal Order

¶ 47 The appellate court below acknowledged that a "trial court obviously has no authority to vacate or set aside" the judgment of a higher court, and further observed that, if a circuit court "is to grant relief at all, it must grant relief from its own order—assuming that it finds a basis for granting that relief." *Price v. Philip Morris, Inc.*, No. 5-09-0089, slip order at 9 (2011) (unpublished order under Illinois Supreme Court Rule 23). However, the appellate court read plaintiffs' section 2-1401 petition not as challenging this court's judgment in *Price*, but as challenging only the order of dismissal that was entered in the circuit court on December 18, 2006. The appellate court then concluded that, because the relief sought was only the vacatur of the circuit court's order of dismissal, rather than this court's judgment, plaintiffs' petition was properly brought in circuit court. *Id.* at 9-10.[3]

¶ 48 Before this court, plaintiffs mirror this reasoning. Plaintiffs again emphasize that section 2-1401(a) states that relief is available in "every case *** regardless of the nature of the order or judgment from which relief is sought" (735 ILCS 5/2-1401(a) (West 2012)), and that the statute contains no exception for orders "entered at the direction of" a reviewing court. Thus, plaintiffs argue, even if section 2-1401 did not authorize the circuit court to vacate the judgment rendered by this court in *Price*, it did authorize the circuit court to vacate the order of dismissal and, therefore, the petition was properly brought in that court.

---

[3]Although this court denied the petition for leave to appeal from the first appellate decision in this case, that action has no precedential effect. *Mattis v. State Universities Retirement System*, 212 Ill. 2d 58, 75 (2004). We may therefore consider any issues addressed in that appellate decision.

¶ 49    Plaintiffs' argument rests on a misapprehension of the nature of the dismissal order. "When a judgment is reversed by a court of review, the judgment of that court is final upon all questions decided ***." *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 305 (1981). If the cause is then remanded by the reviewing court with instructions to the circuit court to enter a specific order, the reviewing court's judgment is, with respect to the merits, "the end of the case," and there is "nothing which the circuit court [is] authorized to do but enter the decree." *Smith v. Dugger*, 318 Ill. 215, 217 (1925). Because the circuit court has no discretion on remand to take any further action on the merits, but must do only as directed, the order entered in the circuit court is necessarily a "ministerial act." *Gospel Army v. City of Los Angeles*, 331 U.S. 543, 546 (1947); *Ute Indian Tribe*, 114 F.3d at 1521 (noting that once an appellate court resolves an issue and remands the cause to enter judgment, the trial court can only follow the " 'ministerial dictates of the mandate' ") (quoting *Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of America*, 962 F.2d 1528, 1534 (10th Cir. 1992)). This principle—that a circuit court order which is entered at the specific direction of a reviewing court is a ministerial act—has long been recognized by this court. As we stated in *Dugger*:

> "A decree entered by a trial court in accordance with the mandate of this court must be regarded as free from error. *It is, in fact, the judgment of this court promulgated through the trial court* and is final and conclusive upon all the parties." (Emphasis added.) *Dugger*, 318 Ill. at 217 (citing *People ex rel. McKee v. Gilmer*, 10 Ill. 242, 247-48 (1848)).

¶ 50    The fact that a dismissal order entered at the direction of a reviewing court is a ministerial act has consequences for how the order may be challenged under section 2-1401. A petition may be brought under section 2-1401 to challenge the order of dismissal if the argument made in the petition is that the circuit court failed to comply with the mandate of the reviewing court. Such a petition would be asking the circuit court only to reexamine the correctness of its own, ministerial act, precisely the undertaking that section 2-1401 is designed to allow. *Cf.* 18B Charles Alan Wright *et al.*, Federal Practice and Procedure § 4478.3 (2d ed. 2002) (noting that it is possible to attack a trial court judgment that violates an appellate mandate under Federal Rule of Civil Procedure 60(b)).

¶ 51    However, it is not permissible under section 2-1401 to challenge a dismissal order entered at the direction of a reviewing court when the argument for relief is based on the underlying merits of the case. Any merits-based challenge would necessarily be directed to the judgment of the reviewing court because that is where judgment was rendered and where the decision on the merits occurred. And, as we have explained, section 2-1401 does not permit the circuit court to grant relief from the judgment of a reviewing court, both because the "same proceeding" language of section 2-1401(b) does not allow a challenge to a reviewing court's judgment to be brought in the circuit court and because our constitution prohibits the circuit court from vacating the judgment of a higher court. *Supra* ¶¶ 29-45.

¶ 52    In this case, plaintiffs' section 2-1401 petition is an impermissible attack on the judgment rendered by this court in *Price*. Plaintiffs' petition discusses *Price* at length, describes the FTC's statements and actions that took place after *Price*, and argues why, in light of these actions, the decision that this court reached in *Price* was incorrect. The petition concludes by stating that, "[a]s the final judgment was predicated on an inaccurate interpretation of the historical record, the newly-available evidence would have prevented entry of the judgment"

and, therefore, the circuit court should "vacate the final judgment in this case." At no point in their petition do plaintiffs allege that the circuit court failed in its ministerial task of entering the dismissal order; the petition is addressed solely to the effect of the FTC's statements and actions on *Price*. Stated otherwise, plaintiffs' petition did not ask the circuit court to revisit the correctness of its own, ministerial act of complying with this court's mandate. Instead, the petition asked the circuit court to revisit the correctness of this court's judgment in *Price*. And that is precisely what the circuit court did.

¶ 53    The circuit court described the task before it in addressing plaintiffs' section 2-1401 petition:

> "[T]his Court must determine whether it is more probably true than not that, had the FTC position been presented in the record on appeal, *the Illinois Supreme Court would not have ruled in Defendant's favor* on its affirmative defense that Plaintiffs' claim was exempt pursuant to Section 10b(1) of the [Consumer Fraud Act]."

Thus, although the circuit court ultimately denied plaintiffs relief, the court's analysis rested on the fundamentally erroneous premise that it possessed the authority to reconsider, and possibly alter, the judgment of this court.

¶ 54    The appellate court's reasoning suffers from a similar error. The appellate court frankly acknowledged that "plaintiffs cannot challenge the dismissal order without also challenging the supreme court ruling" in *Price* and explained that "what the plaintiffs are alleging is essentially that there are facts which, if brought to the trial court's attention during the original trial in this matter, *would have caused the supreme court to rule differently in its December 2005 decision*—which in turn would have led to a different result from the trial court after the mandate issued in December 2006." (Emphasis added.) *Price v. Philip Morris, Inc.*, No. 5-09-0089, slip order at 7, 9 (2011) (unpublished order under Illinois Supreme Court Rule 23). The appellate court thus recognized that plaintiffs' argument for vacating the circuit court's order of dismissal rested first on undoing the judgment of this court in *Price*. And that is exactly what the appellate court attempted to do.

¶ 55    The appellate court, after considering plaintiffs' petition, ultimately concluded that the proper result was to "reinstate the verdict" entered in plaintiffs' favor in the original circuit court action in March 2003. 2014 IL App (5th) 130017, ¶¶ 59-60. But the original judgment could only be reinstated if the appellate court effectively vacated this court's judgment in *Price*. The appellate court therefore attempted to act as a superior court to this one. This is plainly incorrect. Under the hierarchical judicial system created by our constitution, this court "alone can overrule and modify its previous opinion." *Agricultural Transportation Ass'n*, 2 Ill. 2d at 27.

¶ 56    Section 2-1401 does not permit an on-the-merits challenge to a dismissal order entered at the direction of a reviewing court because such a challenge is necessarily directed to the judgment rendered by the reviewing court. Because plaintiffs' section 2-1401 petition in this case was such a challenge, neither the circuit court in this case, nor the appellate court on review, had the authority to vacate the order of dismissal entered on December 18, 2006.

¶ 57                                  C. *Klose v. Mende*

¶ 58    Plaintiffs cite one appellate decision, *Klose v. Mende*, 378 Ill. App. 3d 942 (2008) (*Klose II*), in support of their contention that section 2-1401 relief is available in this case. *Klose*

- 14 -

involved a dispute between an Illinois township and farmers Jerome and Ruth Klose over proposed improvements to two rural roadways that threatened to eliminate some of the Kloses' cropland. The case began in August 2000, when the Kloses brought a declaratory judgment action against the township highway commissioner seeking a determination that they held fee simple title to the disputed portions of the roadways. The defendant township moved to dismiss the action based on certain documents which, the defendant contended, established that the township had acquired a right to the roadways by statutory dedication in 1856. The circuit court granted the township's motion to dismiss, finding that the statutory dedication was valid. *Klose v. Mende*, 329 Ill. App. 3d 543, 544-45 (2001) (*Klose I*).

¶ 59 On appeal, the appellate court held that the documents offered by the township were incomplete and, thus, insufficient to establish the statutory dedication. In addition, the court held that the Kloses had proven, through documentary evidence accompanying their complaint, that they possessed a fee simple interest in the disputed land. However, the appellate court also found that the township had acquired an easement by prescription for the portion of the roads in use at the time of the action, although this easement did not permit the township to carry out the proposed improvements. *Id.* at 546-49. The appellate court therefore vacated the circuit court's dismissal of the Kloses' complaint and, in December 2001, remanded the cause to the circuit court with instructions to enter an order "establishing [the Kloses'] fee simple title and [the township's] easement rights in the two roadways." *Id.* at 550.

¶ 60 What happened next is best stated in the words of the appellate court: "The record indicates that thereafter the Kloses filed a motion to reinstate, to enter a second amended complaint, to set a date for the township's answer, and to order the township to produce right-of-way maps. Various matters were continuously pending in the trial court until the township filed [a] petition to reopen proofs pursuant to section 2–1401 of the Code of Civil Procedure on April 10, 2003." *Klose II*, 378 Ill. App. 3d at 944.

¶ 61 The petition to reopen proofs was based on documents relating to the statutory dedication that were found by the township in a town hall cupboard following the remand to the circuit court. After a hearing on the petition, the circuit court determined that these documents were newly discovered evidence which "constituted the records that the appellate court determined were necessary to establish a valid dedication." *Id.* at 946. For this reason, and because the court concluded the remaining elements of section 2-1401 were satisfied, the circuit court granted the township's section 2-1401 petition to "reopen proofs." *Id.*

¶ 62 On appeal for the second time, the appellate court agreed with the circuit court's conclusion that the newly discovered documents were the ones that were necessary to establish the statutory dedication and stated that "[h]ad the township known of their existence and been able to present the documents during the original proceedings, the trial court's ruling in its favor would have been affirmed by this court." *Id.* at 947. The appellate court also agreed with the circuit court's determination that the elements of section 2-1401 had been satisfied. The appellate court therefore affirmed the judgment of the circuit court, holding that the circuit court had properly granted "the township leave to reopen proofs." *Id.* at 952.

¶ 63 Plaintiffs in the present case contend that, in *Klose II*, the appellate court approved the circuit court's "vacatur of a judgment previously entered at the direction of the appellate court." Thus, plaintiffs maintain that *Klose II* supports their contention that the circuit court in this case had the authority, under section 2-1401, to vacate the December 18, 2006, dismissal

order, even if that meant the circuit court had to address the merits of this court's decision in *Price*.

¶ 64    Plaintiffs misread *Klose II*. Following the first appeal in *Klose I*, the appellate court did not simply reverse the circuit court's dismissal of the Kloses' complaint; it also ruled on the merits and instructed the circuit court to enter an order "establishing [the Kloses'] fee simple title and [the township's] easement rights in the two roadways." *Klose I*, 329 Ill. App. 3d at 550. This was a direction to the circuit court to perform a ministerial act that would have concluded all proceedings with respect to the Kloses' complaint. However, no such order was entered. Instead, on remand the Kloses' moved to reinstate their original complaint and to file a second amended complaint, and the case continued in the circuit court for almost a year and a half until the township filed its petition under section 2-1401. *Klose II*, 378 Ill. App. 3d at 944. Thus, rather than ending the case, the circuit court treated the matter as if it had been remanded by the appellate court in *Klose I* for a trial on the Kloses' complaint.

¶ 65    The appellate court, in *Klose II*, never explained why the circuit court did not enter the order it had been directed to enter. Whatever the reason, the fact that no order was entered distinguishes *Klose II* from the case before us. Unlike *Price*, where the circuit court entered the dismissal order, *Klose* was an ongoing proceeding following the remand, going forward on the Kloses' complaint for declaratory judgment. During the remand proceedings, the circuit court did not vacate an order entered at the direction of the appellate court for the simple reason that no such order had ever been entered. Thus, contrary to plaintiffs' assertions, *Klose II* cannot stand for the proposition that a circuit court has the authority to vacate an order entered at the direction of a reviewing court and, therefore, the case has no relevance here.

¶ 66    And *Klose II* is problematic for another reason. Section 2-1401 is a procedural mechanism for vacating final judgments more than 30 days after their entry. *Vincent*, 226 Ill. 2d at 7. The statute plays no role in an ongoing case. Once the circuit court in *Klose* permitted the case to go forward after the remand, it erred by permitting the township to file its request to reopen proofs as a section 2-1401 petition. The circuit court should have treated the township's request as a motion filed in an ongoing proceeding, subject to the usual rules regarding the law of the case, and then rendered judgment on the Kloses' complaint. There was no need to invoke section 2-1401, which served only to unnecessarily complicate matters. See, *e.g.*, 18B Charles Alan Wright *et al.*, Federal Practice and Procedure § 4478 (2d ed. 2008) (noting the distinction between a collateral challenge to a final judgment brought under Federal Rule of Civil Procedure 60(b), which is a separate cause of action, and motions brought during the course of a single, continuing lawsuit following remand). For this reason as well, *Klose II* is unpersuasive.

¶ 67    In this case, whether the prayer in plaintiffs' section 2-1401 petition "to vacate the final judgment" is viewed as a request to the circuit court to vacate the December 15, 2005, judgment of this court, or a request to vacate the December 18, 2006, dismissal order on the merits, the result is the same: the circuit court was asked to do something it does not have the authority to do—vacate a judgment of a higher court. Accordingly, the circuit court erred in considering the merits of plaintiffs' section 2-1401 petition. As relief was unavailable under that provision, the petition should have been dismissed. *Vincent*, 226 Ill. 2d at 8 (a section 2-1401 petition is subject to dismissal if, " 'on its face, it shows that the petitioner is not entitled to relief' " (quoting *Klein v. La Salle National Bank*, 155 Ill. 2d 201, 205 (1993))). We

therefore vacate the judgments of the circuit and appellate courts and dismiss this cause of action.

¶ 68    The dissent concludes that we have "misconstrue[d]" section 2-1401. *Infra* ¶ 97. Dismissing the common-law origins and long-accepted understanding of the statute, the dissent finds that the General Assembly, in enacting section 2-1401, intended to give our circuit courts the authority to vacate a judgment rendered by a reviewing court. Thus, the dissent would hold that the circuit court in this case had the authority to vacate the December 18, 2006, dismissal order on the merits—even though, to do so, the circuit court would first have to vacate the judgment rendered by this court in *Price*.

¶ 69    The dissent justifies this result on the basis of necessity. According to the dissent, section 2-1401 must be read as authorizing a circuit court to vacate the judgment of a reviewing court in order "to promote justice and fairness." *Infra* ¶ 78. Our holding to the contrary, the dissent explains, improperly denies a remedy to plaintiffs in this case, as well as others similarly situated, and defeats the goals of achieving "fundamental fairness and substantial justice" (*infra* ¶ 118).

¶ 70    This is emphatically untrue. As we have explained, plaintiffs and other similarly situated litigants have a remedy: they may file a motion, pursuant to Illinois Supreme Court Rule 361 (eff. Jan. 1, 2015), to recall the mandate in the reviewing court in which the contested judgment was rendered. This remedy permits "justice and fairness" to be achieved, and it does so in a way that does not require ceding the authority of our reviewing courts to the circuit courts. There is no need, therefore, to embrace an interpretation of section 2-1401, as the dissent does, that upends the judicial hierarchy and that flies in the face of common sense.

¶ 71    Finally, we note that plaintiffs have not moved in this court to recall the mandate from *Price*, and that we have no briefing or argument on how the standards applicable to a motion to recall the mandate would apply to that case.[4] In these circumstances, we decline to *sua sponte* recast plaintiffs' section 2-1401 petition as a motion to recall the mandate from *Price*. We express no opinion on the merits of a motion to recall the mandate, should such a motion be filed in this court at a future date.

¶ 72                                    CONCLUSION

¶ 73    For the foregoing reasons, the judgments of the appellate and circuit courts are vacated. The cause is dismissed without prejudice to plaintiffs to file a motion to recall the mandate in this court.

¶ 74    Judgments vacated.

¶ 75    Cause dismissed.

¶ 76    JUSTICE FREEMAN, dissenting:

¶ 77    Pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), plaintiffs filed a petition for relief from judgment in the circuit court of Madison

---

[4]Counsel for plaintiffs was asked at oral argument whether this case should have been brought as a motion to recall the mandate. He responded that it was not necessary to file such a motion since section 2-1401 authorized the circuit court to grant relief.

County. The circuit court denied the petition, and the appellate court reversed the judgment of the circuit court. 2014 IL App (5th) 130017. This court holds that the lower courts in the instant case erred in considering the merits of plaintiffs' section 2-1401 petition, vacates the judgments of the circuit and appellate courts, and dismisses this section 2-1401 cause of action. My colleagues in the majority reason that plaintiffs in reality sought the vacatur of this court's decision in *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182 (2005) (plurality opinion), and that section 2-1401 does not authorize a circuit court to vacate the judgment of a reviewing court.

¶ 78    I disagree. Plaintiffs filed their section 2-1401 petition under a unique set of circumstances. The appellate court correctly applied section 2-1401 exactly as the legislature intended—to promote justice and fairness. Accordingly, I dissent.

¶ 79                                    I. BACKGROUND

¶ 80    Plaintiffs filed a consumer fraud class action against defendant, Philip Morris, Inc., alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1998)) and the Uniform Deceptive Trade Practices Act (Deceptive Practices Act) (815 ILCS 510/1 *et seq.* (West 1998)). The circuit court certified a class of Illinois residents who had bought "Light" cigarettes in Illinois ever since the introduction of Marlboro Lights in 1971. Plaintiffs alleged that the word "lights" and the phrase "lowered tar and nicotine" were deceptive in that those words led each consumer to believe that he or she would receive lower tar and nicotine from these cigarettes and that, as a result, smoking them would be less hazardous than smoking regular cigarettes. Plaintiffs alleged that all class members bought Lights in reliance on this belief and that no class member would have bought Lights "but for" defendant's unfair or deceptive acts or practices.

¶ 81    Defendant asserted as an affirmative defense section 10b(1) of the Consumer Fraud Act, which exempts conduct "specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1) (West 1998). In pretrial proceedings and at trial, it was defendant's position that its use of the terms "lights" and "lowered tar and nicotine" complied with Federal Trade Commission (FTC) policies. Plaintiffs presented evidence that the FTC did not have an official policy that permitted cigarette companies to use these terms.

¶ 82    It was undisputed that there was no industry-wide formal rulemaking authorizing the use of the disputed descriptors. Further, the FTC does not have any industry-wide formal rule that authorizes or requires cigarette manufacturers to use the terms "light" or "low tar" or any variation thereof. However, defendant's expert witness, Dr. John Peterman, testified, *inter alia*, that a 1971 agreement between the FTC and a cigarette company, memorialized in a consent order, *In re American Brands, Inc.*, 79 F.T.C. 225 (1971), was "an official act of the FTC," the terms of which provided "industry guidance to *** [Philip Morris] and others regarding the use of descriptors." According to Peterman, the FTC likewise intended to provide industry-wide guidance with respect to the use of these descriptors in another consent order, *In re American Tobacco Co.*, 119 F.T.C. 3 (1995).

¶ 83    At the close of trial, the circuit court denied defendant's section 10b(1) affirmative defense, specifically finding that defendant voluntarily chose to use those terms on packages of Marlboro Lights and Cambridge Lights and that no regulatory body had ever required, or even

specifically approved, defendant to use those terms. The circuit court found in favor of plaintiffs and awarded damages totaling $10.1 billion.

¶ 84 This court took the appeal directly from the circuit court. Ill. S. Ct. R. 302(b) (eff. Feb. 1, 1984). The lead opinion reversed the judgment "on the basis that this action is barred by section 10b(1) of the Consumer Fraud Act." 219 Ill. 2d at 185. Justice Garman, joined by Justice McMorrow, concluded that "the FTC's informal regulatory activity, including the use of consent orders, comes within the scope of section 10b(1)'s requirement that the specific authorization be made 'by laws administered by' a state or federal regulatory body." *Id.* at 258. The plurality reasoned that through the 1971 and 1995 consent orders, "the FTC could, and did, specifically authorize" all U.S. tobacco companies to use the words "low," "lower," "reduced," "light," or similar descriptors. *Id.* at 265. This court reversed the judgment and remanded the case to the circuit court with instructions to dismiss the action, according to the plurality, "pursuant to section 10b(1) of the Consumer Fraud Act." *Id.* at 274.

¶ 85 Justice Karmeier specially concurred, joined by Justice Fitzgerald. Justice Karmeier did not specifically agree with the lead opinion's section 10b(1) analysis. *Id.* at 275 (Karmeier, J., specially concurring, joined by Fitzgerald, J.) ("I agree that the judgment of the circuit court should be reversed. In my view however, that conclusion is not dependent on the applicability of section 10b(1) of the Consumer Fraud Act [citation]."). Justice Karmeier opined that plaintiffs' consumer fraud claim failed because "plaintiffs failed to establish that they sustained actual damages." *Id.* However, he "fully concur[red] in the result reached by the [lead opinion]." *Id.* at 285.

¶ 86 I dissented, as did Justice Kilbride. We opined that the FTC's regulatory activity did not rise to the level of "specific authorization" for defendant to use the disputed descriptors in marketing the light cigarettes. *Id.* at 299 (Freeman, J., dissenting, joined by Kilbride, J.); *id.* at 336 (Kilbride, J., dissenting, joined by Freeman, J.).

¶ 87 Plaintiffs filed a petition for rehearing, which was denied by a divided court. *Id.* at 337 (Freeman, J., dissenting, joined by Kilbride, J.). In November 2006, the United States Supreme Court denied plaintiffs' petition for a writ of *certiorari*. *Price v. Philip Morris Inc.*, 549 U.S. 1054 (2006). On December 5, 2006, this court issued its mandate to the circuit court. On December 18, 2006, the circuit court complied with this court's mandate and entered an order dismissing the action with prejudice.[5]

¶ 88 In June 2008, the federal government filed an *amicus* brief in *Altria Group, Inc. v. Good*, 555 U.S. 70 (2008). There, the federal government explained that the FTC: had never given the

---

[5]In January 2007, plaintiffs filed a postjudgment motion pursuant to section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2006)). The motion sought to bring to the circuit court's attention an FTC brief filed in *Watson v. Philip Morris Cos.*, 551 U.S. 142 (2007), in which the FTC explained that it had never requested or required tobacco companies to use these descriptors in advertising their cigarettes. Further, the Supreme Court reversed the decision of the lower court, which the lead opinion in *Price* discussed with approval. The circuit court certified questions for interlocutory appeal. *Philip Morris, Inc. v. Byron*, 226 Ill. 2d 416, 421-22 (2007) (Freeman, J., dissenting, joined by Kilbride, J.). This court allowed Philip Morris's motion for a supervisory order and directed the circuit court to vacate its order certifying questions for interlocutory appeal and to dismiss plaintiffs' section 2-1203 motion. On August 30, 2007, the circuit court dismissed plaintiffs' section 2-1203 postjudgment motion in compliance with this court's mandate.

- 19 -

disputed descriptors any official definition; had never required any action on the part of defendant; had never affirmatively authorized the use of such terms; and did not intend for its two prior consent orders to "authorize" alleged deceptive conduct. In a separate matter, on December 8, 2008, the FTC rescinded its prior 1966 guidance concerning machine measurements of tar and nicotine yields. The FTC explained that its earlier guidance never authorized the use of descriptors. 73 Fed. Reg. 74,500 (Dec. 8, 2008). See 219 Ill. 2d at 188-89. On December 15, 2008, the Supreme Court handed down its decision in *Altria Group, Inc. v. Good*. The Court rejected an affirmative defense similar to what defendant raised here, and recognizing the federal government's *amicus* brief, concluded that the FTC never had any policy authorizing the use of the disputed descriptors. *Good*, 555 U.S. at 87-89.

¶ 89    On December 18, 2008, exactly two years from the circuit court's entry of its dismissal order, plaintiffs filed a section 2-1401 petition for relief from judgment. Plaintiffs alleged that the lack of any FTC authorization of the contested descriptors undermined the entire basis for this court's holding in *Price*. The circuit court granted defendant's motion to dismiss on the basis that it was not timely filed. The appellate court reversed and remanded, holding that section 2-1401's two-year time limit began to run not when this court decided the case in December 2005, but when the circuit court entered its dismissal order on December 18, 2006. The lower courts did not reach the merits of the petition. *Price v. Philip Morris, Inc.*, No. 5-09-0089 (2011) (unpublished order under Illinois Supreme Court Rule 23), *appeal denied*, No. 112067 (Ill. Sept. 30, 2011).

¶ 90    On remand, plaintiffs filed the instant amended section 2-1401 petition. Reaching the merits, the circuit court again denied the petition. The court found that plaintiffs were diligent in filing their petition and found that they had a meritorious claim, *i.e.*, that had the true FTC position been known in the underlying case, defendant would not have prevailed on its Consumer Fraud Act section 10b(1) affirmative defense. However, the circuit court found that it was equally as likely that this court would have ruled in defendant's favor based on the issue of damages. See 219 Ill. 2d at 275 (Karmeier, J., specially concurring, joined by Fitzgerald, J.). Thus, plaintiffs failed to prove that they probably would have prevailed.

¶ 91    The appellate court reversed. 2014 IL App (5th) 130017. The appellate court agreed with the circuit court that (1) plaintiffs exercised due diligence in contesting the issue of FTC authorization of the descriptors in the original trial (*id.* ¶¶ 17-21) and (2) plaintiffs met their burden of proving a meritorious claim (*id.* ¶¶ 22-29). However, the appellate court disagreed with the circuit court's conclusion that this court would have ruled in favor of defendant on the issue of damages. Thus, the appellate court held that the circuit court exceeded the scope of section 2-1401 when it attempted to predict how this court would rule on the issue of damages. The appellate court reversed the circuit court's denial of plaintiff's section 2-1401 petition (*id.* ¶¶ 56-57). The appellate court concluded that granting the section 2-1401 petition for relief from judgment has the effect of "reinstat[ing] the proceedings with the verdict intact" (*id.* ¶¶ 58-60). Defendant appeals to this court. Additional pertinent background will be discussed in the context of the analysis.

II. ANALYSIS

¶ 93     This court holds that the circuit and appellate courts lacked the authority, pursuant to section 2-1401, to vacate the circuit court's December 18, 2006, order dismissing plaintiffs' consumer fraud class action. I disagree.

¶ 94     In construing section 2-1401, the guiding principles are familiar. The primary objective in construing a statute is to ascertain and give effect to the intention of the legislature. All other rules of statutory construction are subordinate to this cardinal principle. The most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. Viewing a statute as a whole, words and phrases are construed in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence must be given a reasonable meaning, if possible, and should not be rendered superfluous. The court may consider the reason for the law, the problems sought to be remedied and the purposes to be achieved, and the consequences of construing the statute one way or another. *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 15; *People v. Botruff*, 212 Ill. 2d 166, 174-75 (2004).

¶ 95     Section 2-1401 of the Code of Civil Procedure[6] provides in pertinent part:

    "(a) Relief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section. Writs of error coram nobis and coram vobis, bills of review and bills in the nature of bills of review are abolished. All relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered. Except as provided in Section 6 of the Illinois Parentage Act of 1984, there shall be no distinction between actions and other proceedings, statutory or otherwise, as to availability of relief, grounds for relief or the relief obtainable." 735 ILCS 5/2-1401 (West 2012).

Section 2-1401 establishes a comprehensive statutory procedure by which final orders and judgments may be vacated or modified more than 30 days after their entry. *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 94 (2006); *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220 (1986). A section 2-1401 petition "can present either a factual or legal challenge to a final judgment or order." *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. Although a section 2-1401 petition must be filed in the same proceeding in which the order or judgment was entered, the petition is not a continuation of that proceeding and does not affect the order or judgment. 735 ILCS 5/2-1401(b), (d) (West 2012). Thus, section 2-1401 establishes an action that is independent and separate from the original proceeding. The petition must be supported by affidavit or other appropriate showing for matters not in the record, and must be filed not later than two years after the entry of the final order or judgment in the original proceeding. 735 ILCS 5/2-1401(b), (c) (West 2012); *Warren County*, 2015 IL 117783, ¶ 31; *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 279 (1982).

---

[6]This provision was formerly codified as section 72 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, ¶ 72).

¶ 96      Further, this court has long recognized that a section 2-1401 petition invokes the equitable powers of a circuit court where necessary to prevent injustice. *Warren County*, 2015 IL 117783, ¶ 34 (quoting *Ellman v. De Ruiter*, 412 Ill. 285, 292 (1952)). Accordingly, the question of whether a section 2-1401 petition should be granted lies within the sound discretion of the circuit court, depending on the facts and equities presented. *Warren County*, 2015 IL 117783, ¶ 37; *Airoom*, 114 Ill. 2d at 221.

¶ 97      The court reasons that section 2-1401 relief from judgment is unavailable in the case at bar because the instant section 2-1401 petition is, in reality, directed not at the circuit court's December 18, 2006, dismissal order, but rather at this court's judgment in our original *Price* decision (*supra* ¶¶ 46-56), and because section 2-1401 does not authorize a circuit court to vacate the judgment of a reviewing court (*id.* ¶¶ 29-45). The court misconstrues section 2-1401 and misapplies that provision to this unique procedural situation.

¶ 98      Plaintiffs properly invoked, and the appellate court properly applied, section 2-1401 to the instant case. In *Price*, this court reversed the judgment entered in favor of plaintiffs and remanded to the circuit court with instructions that the circuit court dismiss plaintiffs' consumer fraud class action. *Price*, 219 Ill. 2d at 274. The circuit court complied with this court's mandate and entered its order dismissing the action. All requirements having been accomplished, the original action based on the then-existing record was thereby terminated.

¶ 99      However, by filing their section 2-1401 petition for relief from judgment, plaintiffs brought a new action that presented a factual and legal challenge to the final dismissal order. Plaintiffs filed their section 2-1401 petition in the circuit court because it was the circuit court that entered the final order in the original proceeding. 735 ILCS 5/2-1401(b) (West 2012). In holding that the section 2-1401 petition was timely filed, the appellate court reasoned: "The trial court obviously has no authority to vacate or set aside the supreme court's ruling in the case. Thus, if it is to grant relief at all, it must grant relief from its own order—assuming that it finds a basis for granting that relief." *Price*, slip order at 9 (unpublished order under Illinois Supreme Court Rule 23). In the same unpublished order, the appellate court recognized the unique circumstances of this case: "Just as the plaintiffs cannot challenge the dismissal order without also challenging the supreme court ruling, they cannot challenge the supreme court ruling without challenging the trial court's dismissal order." *Id.*

¶ 100     However, the relief from judgment that the legislature provides in section 2-1401 covers even unique situations. Section 2-1401 expressly provides that relief from judgment "shall be available *in every case *** regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered.*" (Emphasis added.) 735 ILCS 5/2-1401(a) (West 2012). The statute does not create an exception for judgments entered at the direction of this court. A court will not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *In re S.L.*, 2014 IL 115424, ¶ 16; *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003). Thus, even this court's 2005 *Price* decision does not immunize the judgment entered pursuant to that decision from section 2-1401 relief. Disappointingly, this court strains to read "exceptions, limitations, or conditions" into the unconditional language of section 2-1401. In so doing, the court misapprehends or overlooks settled law.

¶ 101     Initially, the court labors to create a statutory distinction between a section 2-1401 petition challenging an original circuit court judgment that was affirmed on appeal and a section

2-1401 petition challenging an original circuit court judgment that was reversed on appeal. However, in both cases, the section 2-1401 petition is a new action based on matters that were not in the original record, which the reviewing court consequently did not consider. In both cases, relief is sought on the theory that these new matters would have changed the result in the original action. Because "the [section 2-1401] proceeding does not constitute an attack on the judgment of [the reviewing] court it does not come within the inherent power of [the reviewing court] to protect its appellate jurisdiction." *People v. Dabbs*, 372 Ill. 160, 166 (1939).

¶ 102    For example, my colleagues in the majority cite to *Standard Oil Co. of California v. United States*, 429 U.S. 17 (1976) (*per curiam*), in support of their newly created distinction. However, the Court's application of Federal Rule of Civil Procedure 60(b) actually accords with my view of the instant case. Rule 60(b) is the federal counterpart to section 2-1401. We must begin with the premise that "Rule 60(b) enables a court to grant relief from a judgment in circumstances in which the need for truth outweighs the value of finality in litigation." 12 James Wm. Moore, Moore's Federal Practice § 60.02(2), at 60-16 (3d ed. 2015).

¶ 103    In *Standard Oil*, the Court abolished the rule that "required appellate leave before the District Court could reopen a case which had been *reviewed* on appeal." (Emphasis added.) *Standard Oil*, 429 U.S. at 18. The Court reasoned: "Like the original district court judgment, the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events. *Hence, the district judge is not flouting the mandate by acting on the motion*." (Emphasis added.) *Id.* As a leading federal practice treatise explains:

> "An appellate court may not know whether the requirements for reopening a case under [Rule 60(b)] are met until there has been a full record developed. Such a record only can be made in the trial court. Of course the district judge is not free to flout the decision of the appellate court so far as it goes, *but the judge should be free to consider whether circumstances not previously known to either court compel a new trial*. If the trial judge goes too far, and grants, in effect, a rehearing of the appellate court's decision, the normal processes of review still are open. To require in every case the formality of application to the appellate court, which has no facilities for examining the merits of the claim for a new trial, to guard against the possibility that a rare district judge may reopen a judgment that should remain closed, was of dubious utility. Thus, the Standard Oil Court cited its confidence in the ability of the district courts to recognize frivolous Rule 60(b) motions." (Emphasis added.) 11 Charles Alan Wright *et al.*, Federal Practice and Procedure § 2873, at 607-08 (2012).

The reasoning underlying *Standard Oil* applies to petitions for relief from judgments that have been affirmed or reversed by reviewing courts.

¶ 104    Understandably, my colleagues in the majority stress the "mandate rule" which provides simply that a trial court must obey the clear and unambiguous directions in a mandate issued by a reviewing court. *People ex rel. Daley v. Schreier*, 92 Ill. 2d 271, 276-77 (1982) (and cases cited therein). They even invoke the federal mandate rule to support their conclusion that, after the mandate of the reviewing court has issued, the appropriate means to bring to the reviewing court's attention factual matters, which if known to the reviewing court before entry of judgment, would have precluded entry of judgment, is by filing a motion to recall the mandate in the reviewing court. *Supra* ¶ 43. As the treatise cited by the court (*id.* ¶ 44) explains:

"Most requests for relief [pursuant to Federal Rule of Civil Procedure 60] involve matters that happened or should have happened in the district court, not the court of appeals, and are properly acted upon by the district court under Rule 60. *** If the request for relief goes directly to the correctness of the court of appeals ruling, on the other hand, the district court ordinarily lacks power to review the court of appeals decision and any relief must be provided by the court of appeals." 16 Charles Alan Wright *et al.*, Federal Practice and Procedure § 3938, at 875-77 (3d ed. 2012).

However, the same treatise elsewhere discusses the federal mandate rule in relation to Federal Rule of Civil Procedure 60:

"If final judgment has been entered on remand, Civil Rule 60(b) provides the general procedure for seeking relief on the basis of matters that were not before the appellate court. It is clear that a Rule 60(b) motion cannot be used simply to reopen the court of appeals decision ***. *** *But it also is clear that many of the grounds of relief recognized by Rule 60(b) do not attack the court of appeals decision. Relief instead rests on matters outside the original record, and arguments that seek to justify reopening the record. The fact that the judgment was entered on remand after consideration by the court of appeals should not oust the operation of Rule 60(b).* A showing of new facts that could not have been presented earlier, or could not reasonably have been presented earlier, is a simple illustration." (Emphasis added.) 18B Charles Alan Wright *et al.*, Federal Practice and Procedure § 4478.3, at 748-49 (2d ed. 2002).

Thus, the fact that a circuit court judgment has been *reviewed* on appeal, affirmed or reversed, does not preclude the filing of a section 2-1401 petition.

¶ 105    Also, the court looks back to the writ of *coram nobis*, which was a common-law antecedent of section 2-1401, to conclude that plaintiffs could not have filed their section 2-1401 petition in the circuit court. *Supra* ¶¶ 33-37. Although this discussion is an interesting historical essay, it does not describe the scope of modern-day section 2-1401, which invokes a circuit court's equitable powers. *Ellman*, 412 Ill. at 292. This court observed long ago:

"All who are conversant with the history of equity jurisprudence know that as a distinct system it has been of constant growth and development from its inception, covering a period of hundreds of years. 'The jurisdiction of a court of equity does not depend upon the mere accident whether the court has, in some previous case or at some distant period of time, granted relief under similar circumstances, but rather upon the necessities of mankind, and the great principles of natural justice ***.' [Citation.]" *First National Bank of Chicago v. Bryn Mawr Beach Building Corp.*, 365 Ill. 409, 421 (1937).

Indeed, a historical review shows that Illinois courts encouraged the development of section 2-1401 and have permitted its use in new situations where the exercise of such power is necessary to prevent injustice. *Warren County*, 2015 IL 117783, ¶¶ 32-34.

¶ 106    Disappointingly, the court cites to our recent decision in *Warren County* for the proposition that section 2-1401 relief is constrained by a historical, limited understanding of the statute (*supra* ¶ 37). My colleagues in the majority grasp at straws. This court's statement in *Warren County* that "the legislature intended section 2-1401 to operate as the statutory analog to the common law writ" (2015 IL 117783, ¶ 35) concludes a historical discussion that ties the

historical trend of *broadening* relief from judgments to the *unconditional* language of section 2-1401. As Justice Davis of this court observed:

> "It is well that the limits under which relief may be granted pursuant to Section [2-1401] are not precisely defined and have not yet been plumbed. Such boundaries should be flexible to afford growth and development under the philosophy that the desire to achieve substantial justice, viewed in the perspective of the importance of the finality and stability of judgments, will indicate when relief from judgments may be granted." Charles S. Davis, *The Scope of Section 72 of the Civil Practice Act*, 55 Ill. B.J. 820, 830 (1967).

I reiterate that the power to set aside a judgment pursuant to section 2-1401 is based upon substantial principles of fairness and is to be exercised for the prevention of injury and for the furtherance of justice. *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 95 (2006); *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 225 (1986).

¶ 107 Further, I am disappointed that the court needlessly injects constitutional confusion into this case in order to bolster its position. The court observes that the Illinois Constitution establishes our three-tiered court system and invokes the rule of vertical *stare decisis*: a lower court is obligated to follow the decisions of a higher court. Therefore, according to the court, it would be *unconstitutional* for a circuit court to grant section 2-1401 relief from the judgment of a higher court. *Supra* ¶ 38. Certainly, vertical *stare decisis* has been historically viewed as a command, obligation, or rule. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 453 n.4 (2008) (Karmeier, J., dissenting, joined by Thomas, C.J., and Garman, J.); M.B.W. Sinclair, *Statutory Reasoning*, 46 Drake L. Rev. 299, 364 (1997) ("A judge is *** bound by the prior decisions of the courts superior to her court in the jurisdiction's hierarchy; that's vertical *stare decisis*. It is just what it means to have an hierarchical structure in the court system."). However, it is very debatable whether the doctrine of vertical *stare decisis* is *constitutionally* mandated. See Richard W. Murphy, *Separation of Powers and the Horizontal Force of Precedent*, 78 Notre Dame L. Rev. 1075, 1086 (2003); John Harrison, *The Power of Congress Over the Rules of Precedent*, 50 Duke L.J. 503, 518 (2000).

¶ 108 Also, granting section 2-1401 relief to plaintiffs in the case at bar obviously is not "a determination that the proceedings in the appellate or supreme court could be governed by the legislature through section 2-1401." *Supra* ¶ 41. Again, the federal practice treatise cited by the court explains that if, in a Rule 60(b) proceeding, "the trial judge goes too far, and grants, in effect, a rehearing of the appellate court's decision, *the normal processes of review still are open*." (Emphasis added.) 11 Charles Alan Wright *et al.*, Federal Practice and Procedure § 2873, at 608 (2012). The lower courts obviously did nothing to affect this court's authority to regulate appeals or our rules governing appeals. Beginning with defendant filing its petition for leave to appeal, the parties have complied with our rules.

¶ 109 Admittedly, this case comes to us with an unusual procedural background. Unfortunately, instead of simply applying section 2-1401 as the legislature intended to achieve justice, the court needlessly muddies the waters with strained constitutional discussion to support its mistaken course.

¶ 110 Based on the foregoing, a court should grant relief under section 2-1401 where necessary to achieve justice, construing the statute liberally. *People v. Lawton*, 212 Ill. 2d 285, 298-99 (2004). *Klose v. Mende*, 378 Ill. App. 3d 942 (2008), *appeal denied*, 228 Ill. 2d 534 (2008), is

exemplative. In 2000, defendant, Meriden Township, notified plaintiffs, Jerome and Ruth Klose, that it intended to improve North 4550th Road by blacktopping it eastward from East 10th Road for a distance of 3000 feet. These roads bound the Kloses' land on the north and west sides, respectively. Frederick Mende, then highway commissioner, asserted that the township had acquired a 66-foot-wide right-of-way in the road to be paved by an 1856 statutory dedication. As proof of the township's assertion, Mende sent the Kloses certain pages of the township ledger kept by the township clerk, which indicated an 1856 statutory dedication of the 66-foot-wide road. The township was unable to produce any other documents, including the survey that was prepared at the time the road was originally constructed, the original order dedicating the road, or the plat describing the road.

¶ 111     The Kloses objected to the township's plans, claiming that they owned by warranty deed the road right-of-ways at issue. The Kloses filed an action for declaratory relief, seeking an order confirming their fee simple title to the road right-of-ways for North 4550th Road and East 10th Road in Meriden Township. On the township's motion, the circuit court dismissed the complaint and denied the Kloses' motion to amend. The court found that the 1856 road dedication was valid and sufficient.

¶ 112     The Kloses appealed. The appellate court held that the township's claim to the roads failed because the township had not established a valid dedication of the roads. The court found that the documents offered by the township were incomplete and therefore insufficient to establish the dedication. Specifically, the court determined that to satisfy the statutory requirements for a valid dedication, the township was required to provide the petition requesting permission to build the roads; a surveyor's report, survey, and plat; and the road commission's order granting the dedication. *Klose v. Mende*, 329 Ill. App. 3d 543, 546-47 (2001). The court found that the township had acquired a prescriptive easement for the portion of the roads in use at the time of the action. However, that easement would not allow the township to take an extra five to six feet of roadway from the Kloses' land. The appellate court vacated the circuit court's dismissal order and remanded with directions that the circuit court enter an order establishing plaintiffs' fee simple title and the township's prescriptive easement interest in the two roads. *Id.* at 548-49.

¶ 113     On remand, while various matters were pending in the circuit court, the township filed a section 2-1401 petition to reopen proofs. The petition was based on newly discovered documents including the original order dedicating the roads, the original surveyor's report and plat, and receipts from adjoining landowners indicating the compensation paid for the taking of their land for the roads. The circuit court granted the Kloses' motion to dismiss the township's section 2-1401 petition based on the petition's failure to adequately assert due diligence. The township filed an amended petition setting forth the township's diligence efforts. Eventually the township filed a second amended section 2-1401 petition. The Kloses responded with an answer, defenses, and counterclaims. At the close of a hearing, the circuit court granted the township's section 2-1401 petition to reopen proofs.

¶ 114     The Kloses again appealed to the appellate court. The appellate court affirmed. *Klose v. Mende*, 378 Ill. App. 3d 942 (2008). The appellate court agreed with the circuit court that the township had satisfied the requisite elements for granting a section 2-1401 petition. The court observed that the newly discovered evidence consisted of the exact documents that the court found were necessary but lacking. Most importantly, the appellate court stated: "Had the

township known of their existence and been able to present the documents during the original proceedings, the trial court's ruling in its favor *would have been affirmed by this court.*" (Emphasis added.) *Id.* at 947.

¶ 115 In the case at bar, the court opines that plaintiffs "misread" *Klose*. My colleagues in the majority view *Klose* as distinguishable and having "no relevance," as being "problematic," and "unpersuasive." *Supra* ¶¶ 65-66. I disagree. Plaintiffs, like the township in *Klose*, had their judgment reversed on appeal. Although this court reversed plaintiffs' judgment, they filed their section 2-1401 petition in the circuit court, as did the township in *Klose*, because the petition attacks the dismissal order entered there and that is where the statute directs them to file.

¶ 116 Further, plaintiffs by their section 2-1401 petition, brought to the circuit court's attention newly discovered evidence that the FTC never had any policy regarding the disputed descriptors. In *Klose*, the circuit court found that, had the newly discovered evidence been part of the record, the appellate court would not have reversed the original judgment in the township's favor. Likewise in the case at bar, the appellate court found that, had the FTC's nonpolicy been part of the record, this court would not have reversed the original judgment in plaintiffs' favor. A party who receives a judgment in his or her favor should not have that judgment taken away based on a reviewing court's misapprehension of the law or facts. As in *Klose*, the equitable considerations of section 2-1401 obviously apply here to afford an effective remedy for a great injustice.

¶ 117 *Klose* is not the only appellate decision that upheld a trial court's Rule 60 relief from a judgment entered pursuant to an appellate court's mandate, based on either a subsequent change in the law (*e.g.*, *Ritter v. Smith*, 811 F.2d 1398 (11th Cir. 1987)) or newly discovered evidence (*e.g.*, *US West Communications, Inc. v. Arizona Dep't of Revenue*, 14 P.3d 292 (Ariz. 2000) (*en banc*)). Would my colleagues in the majority dismiss all such decisions as distinguishable, having "no relevance," or being "problematic"?[7]

¶ 118 This court has recognized that a section 2-1401 petition invokes the equitable powers of a circuit court where necessary to prevent injustice. *Warren County*, 2015 IL 117783, ¶ 34 (quoting *Ellman*, 412 Ill. at 292). In a proceeding in equity, a court is not bound by strict formulas, but may shape its remedy to meet the demands of justice in every case, however unusual. *Hoyne Savings & Loan Ass'n v. Hare*, 60 Ill. 2d 84, 90-91 (1974). Accordingly, in the case at bar, this court's conclusion that a lower court cannot grant section 2-1401 relief from a judgment entered at the direction of a higher court is inconsistent with the equitable foundation of section 2-1401 relief—to achieve fundamental fairness and substantial justice.

¶ 119 Beside there being no impediment to the application of section 2-1401 to the instant case, the facts here cry out for equitable relief. "Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *Virginian Ry. Co. v. System Federation No. 40*, 300 U.S. 515, 552 (1937) (collecting cases); *accord Thornton, Ltd. v. Rosewell*, 72 Ill. 2d 399, 407 (1978); *County of Du Page v. Henderson*, 402 Ill. 179, 192 (1949). The fact that both our national and state governments have recognized that smoking is

---

[7]Since this court has held that it would be *unconstitutional* for a trial court to grant relief from a judgment entered at the direction of a higher court (*supra* ¶ 38), are these decisions constitutionally invalid as well?

a public health hazard "is in itself a declaration of public interest and policy which should be persuasive in inducing courts to give relief." *Virginian Ry.*, 300 U.S. at 552.

¶ 120    In their *amici* brief, nonprofit public health organizations, medical societies, and former United States Surgeons General inform us of the gravity of defendant's actions in deceptively branding and selling its so-called "light" or "low tar and nicotine" cigarettes and the staggering effect of defendant's deception on the public interest.

¶ 121    In his 2014 Report, the United States Surgeon General found that cigarette smoking is the leading cause of preventable disease and death in the United States; that cigarette smoking and tobacco smoke exposure cause at least 480,000 premature deaths annually in the United States; and that there are at least 16 million people currently suffering from diseases caused by smoking. Surgeon General Report, The Health Consequences of Smoking—50 Years of Progress 659, 678, 870 (U.S. Dept. of Health & Human Services, 2014). Despite the overwhelming evidence that smoking kills and debilitates people, over 42 million adults—roughly one in five—in the United States currently smoke cigarettes. See *Current Cigarette Smoking Among Adults—United States, 2005-2013*, Morbidity & Mortality Wkly. Rep. (Centers for Disease Control & Prevention, Atlanta, Ga.) Nov. 28, 2014, at 1111. The Centers for Disease Control estimate that 1.8 million Illinois adults age 18 and older smoke, as well as 14.1% of Illinois high school students. See Centers for Disease Control & Prevention, Behavior Risk Factor Surveillance System, http://www.cdc.gov/brfss/index.htm (last visited Mar. 3, 2015); Centers for Disease Control & Prevention, Youth Online: High School YRBS, http://nccd.cdc.gov/youthonline/App/Default.aspx (last visited Mar. 3, 2015); U.S. Census Bureau, Quick Facts: Illinois, http://quickfacts.census.gov/qfd/states/ 17000.html (last visited Mar. 3, 2015).

¶ 122    The General Assembly has been blunt in establishing the public policy of this state regarding smoking. For example, in enacting the Illinois Clean Public Elevator Air Act in 1989, the legislature found that "tobacco smoke is annoying, harmful and dangerous to human beings and a hazard to public health." 410 ILCS 83/2 (West 2012). Also, the Smoke Free Illinois Act, enacted in 2007, included the following findings:

> "The General Assembly finds that tobacco smoke is a harmful and dangerous carcinogen to human beings and a hazard to public health. Secondhand tobacco smoke causes at least 65,000 deaths each year from heart disease and lung cancer according to the National Cancer Institute. Secondhand tobacco smoke causes heart disease, stroke, cancer, sudden infant death syndrome, low-birth-weight in infants, asthma and exacerbation of asthma, bronchitis and pneumonia in children and adults. *** Illinois workers exposed to secondhand tobacco smoke are at increased risk of premature death. An estimated 2,900 Illinois citizens die each year from exposure to secondhand tobacco smoke.

> The General Assembly also finds that the United States Surgeon General's 2006 report has determined that there is no risk-free level of exposure to secondhand smoke; the scientific evidence that secondhand smoke causes serious diseases, including lung cancer, heart disease, and respiratory illnesses such as bronchitis and asthma, is massive and conclusive ***." 410 ILCS 82/5 (West 2012).

¶ 123    In the context of this recognized public health epidemic, defendant's misconduct was appalling. The circuit court's findings in the original trial, which no reviewing court has

disturbed, were supported by the following evidence. Defendant's own scientists did not believe that "light" cigarettes delivered less tar and nicotine to human smokers as opposed to testing machines. Defendant concealed this knowledge from the public and the health community. Further, when defendant's secret tests showed that "light" cigarettes produced tar that was higher in toxic substances and more mutagenic than the tar from regular cigarettes, defendant shut down its secret testing, concealed the test results, and continued to market its "light" cigarettes as a healthier alternative to regular cigarettes. Price v. Philip Morris Inc., No. 00-L-112 ¶¶ 55-58, 64-66, 70-74 (Cir. Ct. Madison Co.). The circuit court found as follows. There was no credible evidence to support defendant's representations that Marlboro Lights and Cambridge Lights delivered lower tar and nicotine or were safer than regular Marlboros. Evidence supported the conclusion that Lights were actually more harmful and hazardous than their regular counterparts. Moreover, defendant was aware of the increased harm from these light cigarettes based on its own scientific testing. Despite this knowledge, defendant perpetuated and nurtured the false perception of "healthier smoking," which led existing smokers to delay quitting and motivated more nonsmokers to begin smoking. Id. ¶¶ 69-70.

¶ 124    Indeed, defendant has already been found liable in another jurisdiction for committing the same misconduct. In *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006), *aff'd in part and vacated in part*, 566 F.3d 1095 (D.C. Cir. 2009) (*per curiam*) (*Philip Morris*), the federal government sued defendant and other major tobacco companies in 1999 pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §§ 1961-1968 (1994)). The government charged that the tobacco companies violated the RICO statute by intentionally conspiring to deceive the American public regarding the health effects of smoking cigarettes through their marketing practices. As summarized by the court of appeals, the government alleged that the defendants fraudulently denied that smoking causes cancer and emphysema, that secondhand smoke causes lung cancer and endangers children, that nicotine is an addictive drug and the defendants manipulated it to sustain addiction, that light and low-tar cigarettes are not less harmful than regular cigarettes, and that the defendants intentionally marketed to youth. The government also alleged that the defendants concealed evidence and destroyed documents to hide the dangers of smoking and protect themselves in litigation. *Philip Morris*, 566 F.3d at 1106 (citing 449 F. Supp. 2d at 27).

¶ 125    In August 2006, the district court entered final judgment against the defendants, finding that they violated RICO. 449 F. Supp. 2d at 851, 901. As summarized by the court of appeals:

"The [district] court found that Defendants engaged in a scheme to defraud smokers and potential smokers by (1) falsely denying the adverse health effects of smoking, *id.* at 854; (2) falsely denying that nicotine and smoking are addictive, *id.* at 856; (3) falsely denying that they manipulated cigarette design and composition so as to assure nicotine delivery levels that create and sustain addiction, *id.* at 858; (4) falsely representing that light and low tar cigarettes deliver less nicotine and tar and therefore present fewer health risks than full flavor cigarettes, *id.* at 859; (5) falsely denying that they market to youth, *id.* at 861; (6) falsely denying that secondhand smoke causes disease, *id.* at 864; and (7) suppressing documents, information, and research to prevent the public from learning the truth about these subjects and to avoid or limit liability in litigation, *id*. at 866." 566 F.3d at 1108.

The court of appeals affirmed "the district court's judgment of liability in its entirety." *Id.* at 1150.

¶ 126 Section 2-1401 relief from judgment is grounded in the equitable power of a circuit court to prevent injustice. As I have demonstrated, the unusual procedural background of the instant case presents no reasonable impediment to the application of section 2-1401 relief. Further, equitable relief is called for here in furtherance of a government-recognized public health crisis. Defendant has repeatedly been found liable for deceiving the public regarding this public health hazard, profoundly burdening our national health care system. Defendant "marketed and sold their lethal product with zeal, with deception, with a single-minded focus on their financial success, and without regard for the human tragedy or social costs that success exacted." *Philip Morris*, 449 F. Supp. 2d at 28.

¶ 127                                    III. CONCLUSION

¶ 128 "Doing justice under the law is this court's highest obligation. Through section 2-1401, the General Assembly has provided us with a versatile and effective means of pursuing justice in cases such as this." *Lawton*, 212 Ill. 2d at 299. In construing any statute, a court presumes that the legislature did not intend to enact a statute that leads to absurdity, injustice, or inconvenience. *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 15; *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003).

¶ 129 Admittedly, this is a rare case. However, rather than doing justice under the law as the legislature intended through section 2-1401, this court views *Price* as immunizing the circuit court's dismissal order, which this court directed, from section 2-1401 relief. To reach this result, my colleagues strain to read exceptions, limitations, or conditions into the unconditional language of section 2-1401. My colleagues resort to: an unpersuasive comparison of section 2-1401 with Federal Rule of Civil Procedure 60(b), an irrelevant historical discussion of a common-law antecedent of section 2-1401, the needless elevation of the doctrine of vertical *stare decisis* to constitutional status, and the rejection of appellate decisions that have upheld a trial court's relief from a judgment entered pursuant to an appellate court's mandate.

¶ 130 If viewed in isolation, this court's analysis in the instant appeal would be disturbing. However, when viewed in the wider context of the regretful history of this case, the court's holding should not be surprising. In our original *Price* decision, the manner in which this court reversed plaintiffs' judgment led me to the troubling conclusion that this court had "become increasingly desensitized to the interests of the average Illinois consumer," and that the decision would "send a chill wind over consumer protection." 219 Ill. 2d at 327 (Freeman, J., dissenting, joined by Kilbride, J.). The court denied plaintiffs' petition for rehearing even though plaintiffs raised significant points which the court overlooked or misapprehended. *Id.* at 337 (Freeman, J., dissenting, joined by Kilbride, J.).

¶ 131 Further, this court entered a supervisory order directing the circuit court to dismiss plaintiffs' section 2-1203 postjudgment motion, in which plaintiffs attempted to bring to the circuit court's attention newly discovered evidence that was not available at the time of trial, changes in the law, or errors in the court's previous application of existing law. I dissented from the entry of the supervisory order, stating that "it quickly and quietly closes the book on a case that a majority of this court, I am sure, would rather forget." 226 Ill. 2d at 425 (Freeman, J., dissenting, joined by Kilbride, J.).

¶ 132    In the case at bar, although the court's analysis is neither quick nor quiet, it remains erroneous. I dissent.

¶ 133    JUSTICE KILBRIDE joins in this dissent.